The opinion of the court was delivered by
Spencer, J.
This is the hypothecary action. James R. and Peyton R. Bosley owned in common, or ordinary partnership, several tracts of land. Peyton R. died early in the year 1859, leaving as his sole heirs two sons, John R. and Hubbard S. Bosley. On 29th July, 1859, James R. and these two sods of Peyton R. entered into an agreement, whereby, for the purposes and as basis of future settlement and division, they declared what property was owned and held by them in common. There seems to have been a number of sales and transfers, after this, between these parties of various portions of these lands. On 24th December, 1859, John R. sold to Hubbard S. his interest in certain of these lands and by another, act of sale Hubbard S. sold to John R. his one fourth interest in and to a certain described plantation containing 900 acres, *790 and another tract containing some fifty acres, for $12,600, of which $8000 was said to be paid satisfactorily as cash (evidently by the previous sale from John II. to. H. S., which was for $8000), and three notes of $1533 33, each falling due in one, two, and three years, for security of which a special mortgage and vendor’s lien were retained. -The last of these notes was transferred by H. S. Bosley to his wife in satisfaction of paraphernal claims, and upon it the present suit is brought.
Shortly after the sale aforesaid from H. S. to John B. Bosley, the-latter and James B. Bosley partitioned by notarial agreement the plantation and other lands referred to, one fourth of which was subject to said mortgage in favor of H. S. Bosley. In this partition one half was set apart in kind to James B. Bosley and one half to John B. Bosley. Of the half falling to John B. Bosley, he subsequently sold off to various persons at different times portions thereof.
In several instances H. S. Bosley and his wife, by formal acts relinquished their mortgage and privileges on the portions so sold by John B. Bosley. In only one of these acts is the consideration of the relinquishment stated, to wit: that to one Upshaw, where it is stated that the-relinquishment is made for the consideration of $600.
Mrs. H. S. Bosley having acquired the note of $1533 33, as aforesaid', brought suit against John B. Bosley, obtained judgment, and seized and sold the lands remaining in his hands, she being the purehaser'at the price of $650. James B. Bosley having died, his lands were sold at succession sale and bought by Mrs. May, who sold 262 acres thereof to Hayes, who sold part thereof to Giles.
The present suit is brought by Mrs. H. S. Bosley to subject the-property bought by Hayes to the mortgage and vendor’s privilege securing said note. Hayes calls Mrs. May in warranty, and Giles calls Hayes in warranty.
She alleges that her husband, H. S. Bosley, had sold to John B. Bosley, with reservation of mortgage and privilege, one undivided fourth of the plantation, containing 900 acres, and other lands as per deed of daté made part of the petition. . She then avers “ that portions of said mortgaged property are in the hands and occupancy of D. H. Hayes, who holds under title as owner, and that other portions are in the liko possession of Allen Giles, and that she desires to enforce her said mortgage against said property in their hands, etc.”
No description or designation whatever is given of the “portions,r of these lands so held by these parties. But we think the answers of the defendants, wherein they admit possession and refer specially to their titles, cure these defective and insufficient allegations of plaintiff. That the defendants’ objection to plaintiff’s evidence for insuffi *791 eiency and vagueness oí allegation was therefore not well taken, and was properly overruled.
The answers of defendants and warrantor to plaintiff’s demand set up in substance,
1. A general denial.
2. That plaintiff has no mortgage on the lands in question, because of the partition and the probate sale mentioned.
3. That subsequently to the partition with James R. Bosley, and the conveyance therein to him by John R. Bosley, said John R. Bosley made divers and various sales to other persons, and that the property thus subsequently transferred must be discussed before resorting to the lands previously transferred to James R. Bosley.
4. That plaintiff and her husband have debarred and estopped themselves from enforcing their mortgage against the property so sold to James R. Bosley, by reason of their having renounced their mortgage in favor of junior and subsequent purchasers of portions of the mortgaged property from John R. Bosley, thereby putting it out of plaintiff's power to subrogate defendants to said mortgage as against said subsequent purchasers.
5. The plaintiffs are bound to account for all sums received from the debtor or others on account of said mortgage.
We may remark here, by way of preface, that plaintiff’s proposition that the warrantor’s answer can raise issues only with defendant is clearly erroneous. The warrantor’s duty and obligation is to defend the suit and protect the defendant against plaintiff’s demands.
We have no hesitancy in reaching the conclusion that neither the act of partition between James R. and John R. Bosley (being simply a conventional one) nor the probate sale of James R. Bosley’s estate had the effect of divesting the mortgage in favor of H. S. Bosley. Probate sales divest only the mortgages imposed by the deceased, not those affecting it when he acquired. See 6 N. S. 386; 5 L. 470; 9 L. 12; 29 A. 385.
Judicial partitions alone have the effect of divesting mortgages upon undivided interests in property, and attaching them to the mortgagor’s lot. C. C. 1338 ; 6 La. 214.
But defendants’ counsel argues with much ingenuity and plausibility that though not in name a party to this act of partition H. S. Bosley must be considered as in reality privy and consenting thereto. That the deed from John R. to H. S. of his interest in certain lands, that of H. S. to John R. of the lands in question, and that of partition between James R. and John R. must be viewed as so many steps in execution or consummation of what was contemplated by the act of 29 July, above referred to, to wit, partition of the property. We are unable *792 to concur in these views. We find nothing in the aqt of 29 July, or in any subsequent act, which expressly or impliedly binds EL S. Bosley to any future agreements which maybe made between James B. and John B. Bosley to which he might not be party. To say that because he, by the act of 29 July, agreed upon what was the common property and that future settlements should be based upon the property so agreed upon, he thereby made himself a party consenting to future agreements between his co-proprietors, would be pushing the doctrine of implied consent to extremes. Renunciations are not to be presumed. We can infer no agreement on his part to renounce his mortgage on the property falling to James R. Bosley.
It is very clear that the right of requiring previous discussion of other property subject to the same mortgage, but subsequently sold, does not exist as against a special mortgage. O. P. 73 and 715.
It is equally certain under the Louisiana Code, as well as under every principle of equity, that the creditor must impute to the extinction of his credit all sums received by him, whether from the debtor himself or from the securities of the debt. See C. C. (old) 2202.
The real difficulty in this case is presented by us under the fourth head above mentioned.
A debtor grants a special mortgage, for instance, on his entire plantation. Subsequently he sells half of it to a third person, encumbered with the mortgage, and later sells the other half to another third person; can the creditor, after this first sale, release and remit his mortgage on the half subsequently sold, and then pursue the third possessor of the half first sold for the whole debt ? '
If this third possessor, upon paying the mortgage debt, would be legally subrogated to the debt and mortgage, as they stood at the date of his purchase, for the purpose of forcing the holders of other portions of the mortgaged property to contribute to the payment; or if we can consider the third holders or the property in their hands as sureties of the debtor, or as debtors in solido, then we must hold that the creditor can not pursue for the whole where he has renounced or remitted his mortgage upon part of the property. .
We confess that equitable considerations have strongly inclined us to the adoption of these views; but a careful and closer consideration of the question constrains us to the opposite conclusion.
The principle which underlies the doctrine of legal subrogation, as to sureties and debtors in solido, is that there is privity between the creditor and the person paying; that they are parties to a contract, and that the creditor can not execute that contract in full against one of the parties, after releasing other parties to.it, thus throwing the, whole onus of it upon one party, who by the terms and effect of the contract had *793 the right of sharing its burdens with others. _ Upon this principle the law declares that the release given by the creditor to one debtor in so-lido will discharge the others for his part. C. 0. That the extension of time to the principal, or the release of securities, will entitle a surety to discharge or pro rata relief. C. C.
■ In other words, the creditor is bound to preserve all his rights for the benefit of that one of his debtors who pays, against all his co-corn tractants. The contract must be preserved as a unit if it is to be enforced in its integrity.
Now the third possessor of the mortgaged property is not privy to the contract between the creditor and the original mortgagor. He is not bound for the debt. The creditor has never consented, to take him as surety. Without the consent of the creditor no one can become surety of the debtor in a conventional obligation. He may do so without the consent of the debtor, but not without that of the creditor, for surety-ship, like other contracts, requires the concurrence of two wills.
There being, therefore, no privity between the mortgage creditor and the third possessor, the former is under no obligation to preserve his privileges and mortgages against others, in order that the third possessor may have subrogation thereto in their entirety. It may be that the third possessor, having an interest in discharging the debt, will, upon payment thereof, be entitled to subrogation to the then existing rights of the mortgage creditor. “ But ” as is said in- Offut vs. Hendsley, 9 L. 13, “ between these two there is no privity of contract; they are mere volunteers; he becomes * * * a vendee of the mortgagor without the knowledge or assént of the creditor, and •may have done so against his will. He is under no obligation to pay the creditor, and when he does pay, he must be satisfied with a subrogation to these rights as they exist. * * * We can not see how the rights of a mortgagee may be affected or put in duriori casu by the circumstance of there being a second mortgagor or a sale of the mortgaged premises, etc.”
If, therefore, the mortgage creditor was under no obligation to preserve his securities against others for the benefit of the third possessor, the latter can not complain if the creditor has renounced or lost them. These views have been expressed by this Court (in “ Launusse vs. Larma,” 6 N. S. 104, even in regard to the case of the legal mortgage of the wife, who sought to enforce her mortgage against a. prior purchaser, who pleaded the benefit of discussion, and.that she had renounced her mortgage on properties sold subsequently to that held by him. If that be good law (upon which we express no opinion) in cases where the law gives and requires discussion of property subsequently alienated, it is. so for a stronger reason in cases of special mortgage where the right o.f. *794 discussion does not exist. It was also held in Jackson vs. Williams, 12 M. 334, that when property subject to a judicial mortgage was sold by one act, in lots, to different purchasers, one of these purchasers, on being pursued, could not claim the benefit of division.
In Bayley vs. Tate, 10 R. 45, it was held that “ the plea of discussion can not be opposed to a creditor holding a special mortgage, C. P. 73; C. C. 3367. Nor can a- third possessor of property specially mortgaged for a debt, for which other property is also bound, require that it shall be held liable only for a pro rata portion of the debt. Each and every part of property mortgaged is liable for each and every portion of the debt.” See, also, Suffet vs. Foullu, Journal du Palais, 1872, p. 1210, and authorities there cited in Note 2.
Under the operation of these principles, we conclude that the renunciations made by the plaintiffs of their special mortgage in favor of subsequent purchasers of portions of the mortgaged premises do not estop or prevent them from enforcing it for the whole, against the portions of the property in the hands of defendants, who were purchasers prior in date to those in whose favor the renunciations were made.
We think the judgment appealed from is correct, and it is affirmed with costs. ■
Rehearing refused.